UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RYAN ANDREW CHAMBERS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civ. Case No. 1:19-cv-00168-BLW<br>Crim. Case No. 1:18-cr-00076-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Petitioner Ryan Chamber's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. Civ. Dkt. 1. The motion has been fully briefed, and for the reasons explained below, the Court will deny the motion without an evidentiary hearing.

## BACKGROUND

Chambers was convicted of Possession of Sexually Explicit Images of

Minors in 2009. After serving his prison sentence of 60 months, Chambers began serving 10 years of supervised release. In December 2017, a petition on supervised release was filed. Case No. 3:09-cr-00035-BLW, Dkt. 42. The petition alleged that Chambers had received and possessed child pornography in 2016, distributed child pornography in 2017, and had an unauthorized cell phone. *Id.*

Because the allegations in the supervised release petition constituted separate federal offenses, Chambers' counsel, Courtney Peterson, negotiated a preindictment plea agreement. Crim Dkt. 2. In the plea agreement Chambers agreed to: 1) plead guilty to the information (Crim Dkt. 1) charging him with one count of possession of child pornography, 2) admit to the special allegation that he had a prior sex offense, and 3) admit to two allegations in the supervised release petition. Crim Dkt. 2. The Government agreed that it would not file additional charges arising from the investigation, and would recommend a guideline sentence, to run concurrently with any sentence imposed for the supervised release violation. *Id.* The plea agreement stated that the penalties included a sentence of incarceration of not less than ten years and not more than twenty years. *Id.* Prior to entering into the plea agreement, Chambers was able to review discovery with Peterson and have a private investigator interview potential witnesses.

Chambers pled guilty on March 22, 2018. Crim Dkt. 9. The presentence

investigation report calculated Chambers' offense level as 41, which, with a criminal history category of III, resulted in a guideline range of 360 months to life. Crim. Dkt. 16. The PSR calculated Chambers' offense level based on U.S.S.G. § 2G2.2, which cross references § 2G2.1, to arrive at a base offense level of 32. The adjusted offense level was increased by 10 levels due to specific enhancements under § 2G2.1. *See id.* However, the statutory maximum sentence was 20 years. On June 12, 2018, Chambers was sentenced to 20 years' incarceration. Crim Dkt. 22.

The Government states, and Chambers does not dispute, that it had evidence to charge him with sexual exploitation of a child, 18 U.S.C. § 2251, distribution of child pornography, 18 U.S.C. § 2252A(a)(2), and possession of child pornography, 18 U.S.C. §2252A(a)(5)(B). Because of his prior conviction of possession of sexually explicit images of minors, 18 U.S.C. §2252(a)(4)(B), Chambers would have been subject to an enhanced penalty under 18 U.S.C. § 2260A. If Chambers proceeded to trial, he would have faced a mandatory minimum of 25 years on the sexual exploitation of a child charge and an additional mandatory 10 year consecutive sentence under 18 U.S.C. § 2260A. In total, if Chambers had proceeded to trial, he would have faced a minimum of 35 years, and a maximum of 50 years, incarceration. Peterson states that she advised him of this possibility, and

**MEMORANDUM DECISION AND ORDER - 3**

Chambers does not dispute this statement. *See Peterson Aff.*, Civ. Dkt. 6-1.

Chambers now asserts that Peterson did not advise him that the guideline range would be triple the mandatory minimum sentence.[1] Instead, Chambers asserts that Peterson advised him that his offense level would be 25 and the guideline range would be 70 to 87 months, but that the mandatory minimum would raise it to 120 months. But, at no time did Peterson advise him that he would receive more than 10 years' incarceration. Civ. Dkt. 1. Chambers states that Peterson did not realize that the guideline range would be calculated using the cross reference in § 2G2.2(c)(1), resulting in a base offense level of 32. Chambers states that if he had known that the guideline range would have been 360 months to life, he would not have pled guilty.

In his declaration, Chambers maintains his innocence, and states he told Peterson he was innocent. Dkt. 7-1. He further states that discovery was short and disorganized, and that by accepting the plea agreement he would receive a 10-year prison sentence. *Id.* Chambers states that Peterson did not provide him with a paper copy of the plea agreement, but instead showed him a copy of the agreement on

---

[1] Peterson's affidavit directly rebuts Chambers' claims that she did not advise him of the potential 240-month sentence. Dkt. 6-1. However, for purposes of determining whether an evidentiary hearing is necessary, the Court construes Chambers' version of the facts as true.

her computer at the jail, while they were separated by a glass partition. *Id.* Peterson recommended to Chambers to take a plea deal claiming that they would lose if they went to trial. *Id*. At some later date Chambers signed a copy of the plea agreement – he alleges that Peterson showed up at the jail with only 15 minutes to discuss the plea agreement, they quickly reviewed it, and he signed it. *Id.*

At the plea hearing, the Court had the Government set forth the factual basis as stated in the plea agreement. *Transcript* at 6, Civ. Dkt. 6-2. The Court then specifically asked Chambers if he understood that the maximum period of incarceration could be 20 years, followed by supervised release. *Id.* at 14. Chambers answered "Yes, Your Honor." *Id.* After explaining the constitutional rights Chambers would be waiving, the Court inquired:

> Neither the Court, nor counsel, nor anyone else can tell you exactly what punishment, if any, might be imposed. And if anyone has made such a prediction, it is just that, a prediction. It is not a promise. Are you aware of that?

*Id.* at 16. Chambers responded "Yes, Your Honor." *Id.* The Court further explained that it would take into account all conduct, charged or not. *Id.* The Court asked Chambers if he had gone over each and every paragraph of the plea agreement

with his attorney.[2] *Id.* at 18. Chambers responded, "I did." Finally, the Court asked Chambers if the plea agreement accurately states the agreement he had with the Government, to which, he replied "it does." *Id.*

Chamber claims that when the initial presentence investigation report was filed it was the first time that he learned the sentencing guidelines might be higher than ten years. Civ. Dkt. 7-1. Peterson filed an objection to the presentence investigation report, specifically to the cross reference to USSG § 2G2.1. Crim. Dkt. 14.

The night before the sentencing hearing was Peterson and Chamber's last meeting before sentencing. Civ. Dkt. 7-1. Peterson informed Chambers that he would likely be sentenced to twenty years for the first time. *Id.* He thought this was unacceptable, so she offered to talk to him before the sentencing to talk about withdrawing the plea. *Id.* The next morning, Peterson arrived late to court, went over the letter Chambers was going to read, but never mentioned withdrawing the plea or made any motion to do so. *Id*. Nor did Chambers raise the potential of withdrawing his plea agreement with Peterson at the sentencing. The Court

---

[2] The Court also went through several paragraphs of the plea agreement with Chambers, inquiring each time if he had reviewed those paragraphs. Each time Chambers responded that he had. *See id.*

ultimately denied the objection to the 2G2.1 cross reference. *Transcript*, Civ. Dkt. 6-2 at 7.

Chambers faults Peterson for failing to file a notice of intent to seek a variance, not filing a sentencing memorandum, or not calling an expert to testify to Chambers' amenability to treatment. Civ. Dkt. 1. Peterson's arguments at sentencing specifically addressed several of the 3553(a) factors that applied to the case and argued for a ten-year sentence. *Id.* at 10–13. Peterson states that she chose not to file a sentencing memorandum or retain expert testimony on the amenability to treatment as strategic choices to avoid focus on Chamber's denial of responsibility. *Peterson Aff.*, Civ. Dkt. 6. Chambers had sent two letters to his ex-girlfriend from jail claiming his innocence. At sentencing, the Government relied on these letters and other statements made by Chambers to argue that he had not accepted responsibility for his conduct. *Transcript* at 9, Dkt. 6-3. Peterson specifically addressed these letters in her argument – suggesting they were an attempt by Chambers to keep his girlfriend instead of disclaiming responsibility. *Id.* at 12.

After sentencing, chambers filed the motion to vacate under 28 U.S.C. 2255. Civ. Dkt. 1. In short, Chambers alleges that he was lured into signing the plea agreement due to the incorrect calculations and misguided assurances from

**MEMORANDUM DECISION AND ORDER - 7**

Peterson about the length of his sentence. *Id.* at 4. In addition, he believes that the circumstances of the case prevented him from having the opportunity to withdraw his plea after finding out the accurate guidelines and before the sentencing. Civ. Dkt. at 9. He also asserts that Peterson's failure to file a motion for a variance, file a sentencing memorandum, and present expert testimony constituted ineffective assistance of counsel at the sentencing. Civ. Dkt. 1 at 4–5.

## LEGAL STANDARD

### 1. 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing § 2255 Proceedings, provides that a federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." "Under this standard, a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when

viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) (citation omitted).

If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss a § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the Court does not dismiss the proceeding, the Court then determines under Rule 8 whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazier v. United States*, 18 F.3d 778, 781 (9th Cir. 1994). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *Withers*, 638 F.3d at 1062.

## 2. Ineffective Assistance of Counsel

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice. *See Strickland v. Washington,* 466 U.S. 668 (1984). There is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Id.* at 689. "When a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017). (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir.2005) (*quoting Strickland*, 466 U.S. at 687).

## 3. Plea Withdrawal

Prior to sentencing, a defendant can withdraw his guilty plea only by showing a fair and just reason for withdrawal. Fed. R. Crim. P. 11(d)(2)(B); *United States v. Ruiz*, 257 F.3d 1030, 1031 (9th Cir.2001) (en banc). A defendant does not always have the right to withdraw a plea because the decision to allow withdrawal

of a plea is solely within the discretion of the district court. *Id*. at 1033; *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir.1995). The defendant has the burden to show a fair and just reason for withdrawal of a plea. *United States v. Myers*, 993 F.2d 713, 714 (9th Cir.1993).

## ANALYSIS

Despite the factual disputes at issue in the case, the Court finds that Chambers' factual allegations, even when taken as true, fail to satisfy both of Strickland's prongs.

"Surmounting *Strickland* 's high bar is never an easy task," *Padilla v. Kentucky,* 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). The public's special interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967.

### A. Miscalculation of the sentencing guidelines causing Chambers to plead guilty.

Because a guilty plea is a waiver of the Fifth Amendment's protection against compulsory self-incrimination, the right to a jury trial and the right to

confront one's accusers, *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), it must be a knowing, intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Because "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney," *id*. at 748 n. 6, counsel have a duty to supply criminal defendants with necessary and accurate information. The Ninth Circuit has held that "a mere inaccurate prediction [of the length of sentence], standing alone, [does] not constitute ineffective assistance." *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986). Instead, to show counsel's performance was deficient or that the guilty plea was involuntary, the petitioner must show that counsel provided a "gross mischaracterization of the likely outcome," and "erroneous advice on the possible effects of going to trial." *Id.*

Here, Chambers alleges Peterson told him that he would receive no more than 10 years' incarceration. But, instead, he received a sentence of 20 years. Even accepting Chamber's claims as true, this erroneous prediction does not rise to a "gross mischaracterization." *See U.S. v. Carrington*, 132 F.3d 40 (9th Cir. 1997) (unpublished) (collecting cases). Further, at the change of plea hearing the Court repeatedly advised Chambers that the maximum possible sentence was 20 years, and Chambers stated that he understood. *See United States v. Boniface*, 601 F.2d

390, 393 (9th Cir. 1979). Finally, Peterson correctly advised Chambers of the potential sentence if he proceeded to trial.

Simply put, the Court does not find Peterson's performance deficient, nor that Chambers' plea was involuntary. Even if it was, Chambers cannot show prejudice. "Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." *Lee*, 137 S. Ct. at 1966.

Chambers voluntarily made his decision to enter a plea after being repeatedly advised by the Court of the consequences. Being aware of the plea agreements terms weighs strongly against a motion to vacate a sentence due to ineffective counsel. *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987).

Peterson's failure to move withdraw the plea did not prejudice Chambers because the motion for withdrawal would not have been granted. "A defendant cannot withdraw his plea because he realizes that his sentence will be higher than he had expected." *United States v. Nostratis*, 321 F.3d 1206, 1211 (9th Cir. 2003). "[F]ear of receiving a harsh sentence, standing alone, [does not constitute] a "fair and just" reason to withdraw a plea, even if counsel's initial advice as to length of plea turned out to be inaccurate." *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989). When the Court informs the defendant of the maximum sentence,

inquires whether the plea is voluntary, and affirms that there were no promise of sentence length it may deny a motion to withdraw the plea agreement. *See, e.g., United States v. Kaneshiro*, No. 19-10274, 2020 WL 3889603, at *1 (9th Cir. July 10, 2020).

Chambers alleges that he first mentioned that he wanted to withdraw his plea after hearing that he was likely to receive a twenty-year sentence. He alleges no other fair or just reasons for withdrawing the plea, and the Court's colloquy sufficiently warned Chambers of the possibility of getting this higher sentence. A motion to withdraw the plea would not have succeeded, even if Chambers actually asked Peterson to file one.

### B. Ineffective assistance of counsel at sentencing.

` The record shows that Peterson provided competent counsel at the sentencing hearing. When she received the presentence report, Peterson immediately filed an objection to the cross reference under § 2G2.2. During the sentencing hearing, she argued for a minimum sentence of ten years. She addressed the exact same arguments as those she would have made in a formal request for variance. Peterson reasoned it would be better not to have any formal motions in order to prevent evidence of Chamber's lack of acceptance of responsibility. These are strategic decisions, and the Court applies a "heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. The Court finds Peterson's

representation at sentencing was not deficient. Further, Chambers was not prejudiced by Peterson's representation, even if she had filed a formal motion for variance, and presented expert testimony, the Court still could have sentenced Chambers to the statutory maximum, which was well below the guideline range. Accordingly, the Court will deny Chambers' § 2255 motion.

### C. Certificate of Appealability

The standard to obtain review is lower than that required for a petitioner to succeed on the merits of his petition. *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000). To satisfy this lower standard when the court has denied a § 2255 motion, a petitioner must show reasonable minds could debate over the resolution of the issues or that questions raised in the petition deserve further review. *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006). Having reviewed the record in this case, the Court finds that reasonable jurists would not find its determinations regarding Chambers' claims to be debatable or deserving of further review. Chambers failed to demonstrate ineffective assistance of counsel under the *Strickland* test, and cannot show counsel's calculation of the guideline range, justify relief under § 2255. Accordingly, the Court will not issue a certificate of appealability as to any issue raised in Petitioner's § 2255 motion.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion to Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civ. Dkt. 1) is **DENIED**.

2. No Certificate of Appealability shall issue.

DATED: October 29, 2020

B. Lynn Winmill
U.S. District Court Judge