UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>v.<br><br>RYAN ANDREW CHAMBERS,<br><br>　　　Defendant. | Case No. 1:18-cr-00076-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Ryan Chambers's Motion for Release from Custody pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 52. The Government filed a response in opposition (Dkt. 54) and Chambers replied (Dkt. 55). The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

In 2018, Chambers pled guilty to possession of child pornography. Dkt. 2. The Court sentenced him to 240 months incarceration with 10 years of supervised release to follow.

MEMORANDUM DECISION AND ORDER - 1

Dkt. 22.[1]

The underlying facts of the case are straightforward. Chambers was arrested after sharing child pornography with an undercover officer and soliciting child pornography from the officer. Dkt. 16, at 3–5. He also solicited a third-party to send him sexually explicit photos of herself or her daughter. *Id.* at 4. At the time of the offense conduct, Chambers was on supervised release for a conviction of possession of sexually explicit images of minors. *Id.* at 3. To date, Chambers has served roughly 60 months, or less than half, of his imposed sentence.

On May 6, 2019, Chambers filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Case No. 1:18-cv-00168-BLW, Dkt. 1. Judge Winmill, who presided over the case at that time, denied the motion and did not issue a certificate of appealability. *See id.* at Dkt. 9. The Ninth Circuit also denied Chambers's request for a certificate of appealability, and denied his request for reconsideration, noting that no further filings would be accepted in the case. *See id.* at Dkts. 15, 16.

Chambers has since filed three motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Dkts. 28, 41, 52. In his first motion, Chambers asserted that his medical conditions, coupled with the COVID-19 pandemic, were sufficiently extraordinary and compelling reasons to support a reduced sentence. Dkt. 28. The Court denied that motion (Dkt. 36), and the Ninth Circuit denied Chambers's appeal of this Court's decision (Dkt. 48). In his second motion, Chambers asserted that he is actually innocent (Dkt. 41), which

---

[1] Due to Judge Edward J. Lodge taking inactive senior status, this case was reassigned to District Judge B. Lynn Winmill (Dkt. 27) and then later to the undersigned (Dkt. 50).

the Court also denied (Dkt 46).

Now, Chambers has filed a third motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Dkt. 52. Chambers continues to argue he is innocent, and that treatment of his medical conditions has been substandard, thus warranting a compassionate release. *See Id.* Additionally, Chambers argues that an alleged assault by a BOP official further supports his claim for compassionate release. *Id.* at 8–9.

Although many of Chambers's arguments for his current Motion are similar or identical to his previous motions, this Court will address his claims for the sake of being thorough.

## III. LEGAL STANDARD

Chambers seeks compassionate release under the First Step Act ("FSA"), amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[2] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[3] *Id*. If the latter

---

[2] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[3] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18

criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Although the evidence in the record is not clear that the warden at FCI Fort Dix even received Chambers's request, Chambers argues that he filed a request with the warden on December 15, 2022. Dkt. 55, at 1. However, Chambers only provided evidence of an email sent to the warden inquiring of the status of the request and did not provide any official documentation of the request itself. *Id.* at 8. That said, the email Chambers attached to his Motion was dated January 30, 2023. *Id.* Thus, it appears Chambers may have filed something between December of 2022 and January of 2023; however, the Court cannot be

---

U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

sure. Chambers filed his motion with the Court on February 13, 2023, over 30 days after Chambers suggests that he sent a request to the warden of FCI Fort Dix. Dkt. 52. In an effort to afford Chambers every benefit, the Court assumes without deciding that he exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

Having assumed that Chambers has exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Chambers bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of

Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). This assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. As such, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13 when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—was momentarily left open. The Ninth Circuit has recently answered that question in the negative. *See United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (holding that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."). Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*

First, Chambers argues that his medical conditions with hypertension and Zenker's Diverticulum are sufficiently extraordinary and compelling reasons to permanently reduce his sentence. Dkt. 52, at 2–8. Judge Winmill previously rejected Chambers's argument that these conditions, coupled with the COVID-19 pandemic, were sufficiently extraordinary or compelling. Dkt. 36. Since then, Chambers has been vaccinated for COVID-19 and his medical records show he is a relatively healthy 41-year-old Dkt. 31, 52-1. Nonetheless, Chambers argues that the treatment he has received for these medical conditions has been insufficient. *See* Dkt. 52, at 2–8. However, Chambers's medical records show that his care-providers are aware of his existing medical conditions and treating them accordingly. Dkt. 31, 52-1.

Subdivision 1(A) of U.S.S.G. § 1B1.13 provides that medical conditions may

constitute extraordinary and compelling reasons for compassionate release when the defendant is suffering from a "serious physical or medical condition" which substantially diminishes his ability to provide self-care while in prison nor is he expected to recover. Chambers has not shown that this is the case given his circumstances. Rather, he has received, and continues to receive, care for both medical conditions while in prison. Dkts. 31, 52-1.

Second, Chambers argues that draft guidelines issued by the United States Sentencing Commission that are not yet in effect may allow compassionate release when, as he alleges here, a defendant has been assaulted by a BOP employee or contractor. Dkt. 52, at 8. Even assuming the truth of Chambers's claim, the Court is not bound by a draft of the Sentencing Commission's guidelines.

### C. 18 USC 3553(a) Factors

Finally, the Government argues the 18 U.S.C. § 3553(a) factors weigh against Chambers's release at this time.[4] Dkt. 54, at 9. The Court agrees. Chambers has only served

---

[4] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

    (2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

60 months of his 240-month sentence. Such a substantial reduction in Chambers's sentence would not accurately reflect the seriousness of the offense, especially considering that this is the second time Chambers's has been incarcerated for the same sex offense.

Reduction of Chambers's sentence would also reduce its deterrent effect as it would signal to the public that repeat sex offenders who possess and solicit child pornography are able to plead guilty, deny their guilt, then be released from prison. The fact that Chambers is a repeat offender and that he has not accepted responsibility for his crimes by claiming innocence after admittance of guilt further suggests that society would be better protected by keeping Chambers in prison at this time.

While Chambers claims that he cannot receive rehabilitative training until the final eighteen months of his sentence (Dkt. 52, at 14), such training will become available once Chambers reaches that portion of his sentence, and there is no evidence that Chambers would seek out rehabilitative training on his own volition should his sentence be permanently reduced.

For these reasons, the Court agrees with the Government's argument that the public is currently best protected by Chambers's continued incarceration. As such, all four factors set forth in U.S.C. § 3553(a)(2) weigh against releasing Chambers early.

## V. CONCLUSION

In sum, the Court assumes that Chambers has exhausted his administrative remedies. However, he has failed to demonstrate an "extraordinary and compelling reason" for his release and has failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the

MEMORANDUM DECISION AND ORDER - 8

Court cannot depart from its prior sentence and release Chambers at this time. Accordingly, the Court must DENY Chambers' motion.

## VI. ORDER

The Court HEREBY ORDERS:

1. Chambers's Motion for Release from Custody (Dkt. 52) is DENIED.

DATED: June 8, 2023

David C. Nye
Chief U.S. District Court Judge